O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WILLIAM L., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:22-cv-07330-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.
## INTRODUCTION

On October 7, 2022, Plaintiff Robert William L. ("Plaintiff") filed a Complaint for review of denial of social security disability benefits. (Dkt. 1.) Plaintiff filed Plaintiff's Brief ("PB") under the Rule 6 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). (Dkt. 21.) Defendant filed a responding Commissioner's Brief ("CB") under the Rule 7. (Dkt. 28.) Plaintiff replied ("PRB"). (Dkt. 29.)

For the reasons stated below, the Commissioner's decision denying benefits is AFFIRMED.

## II.

## BACKGROUND

In November and December 2020, Plaintiff applied for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and Supplemental Security Income ("SSI") under Title XVI, 42 U.S.C. § 1381 et seq., respectively, alleging disability beginning on an amended onset date of April 6, 2021.[1]  Administrative Record ("AR") 57, 285, 290-301.

On February 17, 2022, an Administrative Law Judge ("ALJ") conducted a telephonic hearing at which Plaintiff, who was represented by counsel, appeared and testified, along with a vocational expert ("VE").  AR 50-75.  On March 30, 2022, the ALJ issued an unfavorable decision.  AR 26-38.  The ALJ used the mandatory five-step evaluation process.  At step two, the ALJ found that Plaintiff had the following severe, medically determinable impairments ("MDIs"): "major depressive disorder; schizoaffective disorder, bipolar type; anxiety disorder; and alcohol use disorder."  AR 29.  A step four, the ALJ found that despite these MDIs, Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels with the following mental limitations:

> [S]imple, routine, repetitive tasks; no jobs requiring public interaction; no jobs requiring significant teamwork; occasional interaction with coworkers and supervisors; no fast paced work such as rapid assembly or conveyor belt work; and no significant changes in work routine.

AR 33.

Based on this RFC, the VE's testimony, and other evidence, the ALJ found

---

[1] April 6, 2021 is the day after Plaintiff enrolled in a sober living home.  AR 55, 57, 799, 919. Plaintiff originally alleged disability starting on October 9, 2020, the day after he stopped working.  AR 285, 295.

that Plaintiff could perform his past relevant work as a cleaner, industrial, both as actually and generally performed.  AR 38.  The ALJ concluded that Plaintiff was not disabled.  AR 38.

## III.
## ISSUES PRESENTED

This appeal presents the sole issue of whether the ALJ erred in evaluating the medical opinion of psychological consultative examiner ("CE") Megan Williamson, Psy.D.  (PB at 2, Table of Contents.)

## IV.
## SUMMARY OF VOCATIONAL AND MEDICAL OPINION EVIDENCE

Plaintiff graduated from high school in 1992 with special education services for dyslexia.  AR 337, 753.  He worked at Amco Transmission from 1996-2001 then as a fulltime janitor from 2013-2019.  AR 338, 753.  From January to October 2020, he worked fulltime as a housekeeper at The City of Hope.  AR 54, 338.  He quit that job on October 8, 2020, or he was let go for missing too much work.  AR 54-55, 336.  At about the same time on October 4, 2020, Plaintiff was hospitalized for depression with suicidal ideation.  AR 523.  He reported "since age 19 he was drinking 6 pack of beer per day," but "he quit drinking 4 months ago."  AR 423.  He relapsed later in October 2020.  AR 587, 751.  He received state disability benefits for about a year.  AR 55.

In March 2021, State agency consultant Tawnya Broade, Psy.D., recommended a consultative examination.  AR 85.  Dr. Broade thought it inconsistent that Plaintiff's father[2] held his power of attorney when Plaintiff had such a long work history, raising questions in her mind about "whether work history was supported in some way."  AR 85.

---

[2] Plaintiff was married from 2006 to 2016.  After his divorce, he lived with a girlfriend for 18 months.  By July 2020, he was living with his parents.  AR 754.

Per this recommendation, Dr. Williamson conducted a psychological evaluation on May 18, 2021. AR 859-67. For the prior six weeks, Plaintiff had been living at Mariposa House, which he described as a residence "for individuals with mental health issues." AR 861. Dr. Williamson noted that Plaintiff had six psychiatric hospitalizations, most recently in January 2021. AR 861. He was taking multiple mental health medications. AR 861. He reported a history of alcohol abuse, but less significant than stated in his medical records. AR 862. He told Dr. Williamson that he was unable to drive and did not have a valid driver's license.[3] AR 862. He could complete self-care independently, handle his own funds, complete household tasks, and attend meetings and medical appointments. AR 862. He could do basic spelling, addition, and subtraction, but not multiplication. AR 864. From IQ testing, Dr. Williamson concluded that Plaintiff was "functioning in the extremely low range of intelligence with a Full Scale IQ of 63." AR 865. Other testing showed that Plaintiff's various forms of memory were "all in the extremely low range." AR 865. Plaintiff's score on a trail-making test showed impaired attention, concentration, and decision-making. AR 866.

Dr. Williamson diagnosed Plaintiff as suffering from "major depressive disorder with psychotic features." AR 866. She opined that he could carry out jobs involving 1- or 2-step instructions with no trouble accepting instructions from supervisors. AR 866-67. She also opined that he had "severe"[4] impairment in his abilities to (1) relate and interact with coworkers and the public; (2) maintain

---

[3] In January 2021 Function Reports, both Plaintiff and his faither checked a box indicating that Plaintiff drives. AR 350, 375. On October 31, 2020, Plaintiff was hospitalized "in police custody status post motor vehicle accident under the influence of alcohol." AR 480. In December 2020, he told doctors that he had "totaled his car." AR 453.

[4] Dr. Williamson did not define the term "severe," but she used it to signify impairment more serious than "mild" or "moderate." AR 867.

concentration, attention, persistence, and pace; and (3) associate with day-to-day work activity including attendance and safety. AR 867. He had "moderate to severe" impairment in his ability to "maintain regular attendance in a workplace and perform work activities on a consistent basis." AR 867. As the basis for all these opinions, Dr. Williamson cited "[Plaintiff's] clinical presentation, clinical observations, [and] review of records." AR 867.

In June 2021, a medical reviewer questioned Dr. Williamson's findings, as follows:

> I find that the MSS [medical source statement] appears overly restrictive, esp[ecially] as [Plaintiff] held a FT [fulltime ] job from 10/2013- 10/2019 and given his ADLs [activities of daily living]. Do you agree that w/ sobriety & med compliance, [Plaintiff] would be capable of SRT's [simple, repetitive tasks] w/ limited public contact?

AR 86. State agency consultant Preston Davis, Psy.D., responded, offering opinions about Plaintiff's mental RFC. First, Dr. Davis found Plaintiff's ADLs inconsistent with his claimed level of impairment. AR 92-93. Per his Function Report, Plaintiff had no problems with self-care and chores, although he needed some reminders. AR 373-74. He could use public transportation, shop in stores, and pay bills. AR 375. The only side effect from his mental health medications was "blurred vision," and he wore corrective glasses. AR 378-79.

Next, Dr. Davis gave multiple reasons for finding Dr. Williamson's MSS unpersuasive, as follows:

> The opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion.
> The opinion contains inconsistencies, rendering it less persuasive.
> The opinion appears to rely on the assessment of limitations resulting from an impairment for which the source has not treated or

5

>   examined the individual.
>
>   The medical opinion is without substantial support from the medical source who made it, which renders it less persuasive.
>
>   The CE examiner's opinion is an overestimate of the severity of the individual's restrictions/limitations.

AR 98. Dr. Davis also noted that Dr. Williamson "did not Dx [diagnose] [Plaintiff] with a cognitive dx [disorder]" such that her "severe [findings] were not fully supported." AR 93; see also AR 86 ("The Severe for interacting was not supported by [Plaintiff's] presentation at the [psychological] CE. Neither was the Severe for CPP [concentration, persistence, and pace], attendance or safety. The opinion of [Dr. Williamson] was overly restrictive & not internally supported." AR 86.

Dr. Davis concluded that Plaintiff had a less restrictive mental RFC than Dr. Williamson had opined, as follows:

>   [Plaintiff] can perform simple & repetitive work tasks commensurate with his past work duties. He can interact with supervisors & with coworkers on a limited basis. Contact with the general public should also be limited. Working around others would be distracting for [him], & he would misinterpret other's intentions & words. He can adapt to a work setting that is not fast paced. No other [psychological] based limits assessed.

AR 86, 97.

On reconsideration in September 2021, M. Lin, M.D., also noted Dr. Williamson's opinions. AR 132-33. Dr. Lin summarized Plaintiff's medical history, including hospitalizations for several days in November and December of 2020 due to suicidal thoughts. AR 137. Dr. Lin ultimately agreed with Dr. Davis's assessment, reasoning as follows:

>   Most recent NP PN dated 08/03/2021 [possibly AR 808-09] noted

|   |   |
|---|---|
| 1 | that claimant has been stable with current [psychological] regimen. |
| 2 | MSE [mental status examination] was intact for |
| 3 | concentration/memory and void of overt psychosis. … [The |
| 4 | Williamson consultative examination] was done in 05/20201 and |
| 5 | showed claimant to exhibit overall coherent TP [thought process], |
| 6 | with intact I/J, [insight/judgment] orientation, and claimant was able |
| 7 | to perform serial 2's.  FSIQ=63 was felt to be possibly an |
| 8 | underestimation due to a combination of depression, medication, and |
| 9 | anxiety factors.  Given the updated [treating medical evidence], the |
| 10 | recent work hx [history], and the ADLs being intact for simple daily |
| 11 | tasks, evidence supports that with continued [psychological |
| 12 | treatment] and sobriety, claimant retains the ability to do LPC |
| 13 | [limited public contact] SRT with simple work routine. |

AR 137.

## V.

## DISCUSSION

**A.     Relevant Administrative Proceedings.**

The ALJ found that Dr. Williamson's "opinion for 'severe' impairments with various areas, including the ability to relate and interact with coworkers, maintain concentration, attention, persistence, and pace, and with day to day work activity including attendance and safety, is unsupported by the examiner's own various normal findings, as highlighted in the 'paragraph B' analysis." AR 36.  In the Paragraph B analysis, the ALJ found that Plaintiff had only "moderate" impairment in the four relevant areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  AR 30-31.

The ALJ also found Dr. Williamson's opinion "inconsistent with the overall

1 evidence, including Pacific Clinic records showing various intact findings since the
2 amended alleged onset date as noted above such as [Plaintiff] being alert and
3 oriented x 4, cooperative, with normal speech, with a 'good' mood, and no
4 perception issues." AR 36, citing AR 788 (5/7/21: normal speech, good mood,
5 linear thought process, no hallucinations, concentration/memory intact), AR 801
6 (6/23/21: same), AR 805 (7/6/21: same), AR 809 (8/3/21: same), and AR 878
7 (9/8/21: same).

In contrast, the ALJ found the opinions of State agency consultants Drs. Davis and Lin persuasive because they were "supported and consistent with the record." AR 37. The ALJ explained, "since the amended alleged onset date, the record, including the consultative psychological examination findings and Pacific Clinic treatment records, show various intact and stable findings within the context of sobriety and regular mental health treatment, such that the record does not support greater than moderate limitations." AR 37.

**B.   Relevant Law.**

Plaintiff's claim for benefits is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)-(b).

Recently, the Ninth Circuit provided the following guidance regarding treatment of physicians' opinions under the revised regulations:

> The revised social security regulations are clearly irreconcilable with
> our caselaw according special deference to the opinions of treating

|   |   |
|---|---|
| 1 | and examining physicians on account of their relationship with the |
| 2 | claimant. See 20 C.F.R. § 404.1520c(a) ("We will not defer or give |
| 3 | any specific evidentiary weight, including controlling weight, to any |
| 4 | medical opinion(s) …, including those from your medical sources."). |
| 5 | Our requirement that ALJs provide "specific and legitimate reasons" |
| 6 | for rejecting a treating or examining doctor's opinion, which stems |
| 7 | from the special weight given to such opinions, see Murray, 722 F.2d |
| 8 | at 501-02, is likewise incompatible with the revised regulations. |
| 9 | Insisting that ALJs provide a more robust explanation when |
| 10 | discrediting evidence from certain sources necessarily favors the |
| 11 | evidence from those sources—contrary to the revised regulations. |

Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." Id. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate … how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." Woods, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)); see also id. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" Id. at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)); see also id. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" Id. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); see also id. § 416.920c(c)(2).

**C.     Analysis of Claimed Error.**

Plaintiff argues that the ALJ's statement that Dr. Williamson's opinion "is unsupported by the examiner's own various normal findings, as highlighted in the

'paragraph B' analysis" is "inadequate" to explain the ALJ's reasoning. (PB at 14-15.) Plaintiff contends that Dr. Williamson "provided ample" support for her opinion. (PB at 15-16.)

But both State agency doctors who considered Dr. Williamson's opinion viewed the "severe" limitations as unsupported by her own findings. AR 86, 98, 137. For example, Dr. Williamson opined that Plaintiff's ability to interact with coworkers was severely impaired. AR 867. But Dr. Williamson noted that Plaintiff came to the consultative examination with family (AR 859) and lived in a group home (AR 862). His "attitude and degree of cooperation were adequate for the exam." AR 859. Plaintiff reported being able to go out in public alone and interact with others appropriately at medical appointments and at group home meetings. AR 862. Dr. Williamson assessed "intact" judgment and insight, both important for getting along with others. AR 864. While Dr. Williamson cites "review of records" as support for this "severe" opinion (AR 867), neither Dr. Williamson nor Plaintiff cites anything in Plaintiff's medical records that suggest more than moderate difficulty interacting with others. The ALJ noted that medical records from treating sources found Plaintiff "cooperative." AR 40, citing records including AR 884 (11/3/21: "Pt. is stable, calm and cooperative"); see also AR 609 (3/26/21: presented as "acutely intoxicated" but "cooperative"), AR 878 (9/8/21: "cooperative"). The ALJ discussed evidence of Plaintiff's social interactions, noting that while he reported having "episodes in which he gets angry and frustrated," Dr. Williamson's findings showed "adequate attitude and cooperation, speech was normal and clearly articulated, the claimant noted he was able to go out alone and that his relationships with family and friends are fair."[5] AR 30, citing AR 862. In sum, Plaintiff has not demonstrated a lack of substantial, evidentiary

---

[5] Neither Plaintiff nor his father indicated that "getting along with others" was a problem for Plaintiff. AR 352, 377.

support for the ALJ's finding that Dr. Williamson's opinion lacked support.

Next, Plaintiff contends that the ALJ failed to consider and discuss the abnormal findings from Dr. Williamson's testing. (PB at 16-17; PRB at 3.) But the ALJ considered and discussed Plaintiff's low IQ score. AR 31-32 (noting the score's inconsistency with Plaintiff's ADLs, such as performing independent self-care, going out alone, handling cash, and interacting appropriately with others). More fundamentally, in the Paragraph B analysis, the ALJ was explaining why Plaintiff's functional limitations were "moderate" as opposed to "severe," so the ALJ logically highlighted evidence consistent with less serious limitations. For example, Plaintiff cites that Dr. Williamson's testing showed his "auditory, visual, visual working, immediate, and delayed memory were all in the extremely low range." (PRB at 3, citing AR 865.) But the ALJ explained why these very low test results were not conclusive. The ALJ pointed to other testing by Dr. Williamson that showed Plaintiff could recall 5 digits "forward and 4 backwards, he could recall 3 items immediately, and knew the current President of the U.S." AR 30, citing AR 863-64. The ALJ also cited multiple treating sources who assessed Plaintiff's memory as "intact." AR 30, citing AR 788 (5/7/21) and AR 878 (9/8/21). The ALJ's discussion of the evidence was adequate to permit review of the reasons for his findings about Plaintiff's mental RFC.

## VI.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: September 01, 2023

_____
KAREN E. SCOTT
United States Magistrate Judge